```
IN THE UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:10CR146 |
| | ) | 8:10CR425 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| RICHARD COSTANZO, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on November 4, 2011.

**I. Facts**

The defendant was charged with Conspiracy to Commit Interstate Transportation with the Intent to Engage in Prostitution, Using an Instrument of Interstate Commerce to Promote Prostitution, Transportation with Intent to Promote Prostitution, and money laundering in Case No. 8:10CR146 and with witness tampering in Count I of case no. 8:10CR425. The defendant entered a plea of guilty to Counts I, III, IV, V, VI, VIII and IX of the Superseding Indictment in Case No. 8:10CR146 and to Count I of the Indictment in Case No. 8:10CR425.[1] Filing No. 191 in Case No. 8:10CR146, text minute entry; Filing No.

---

[1] Count I of the Superseding Indictment in 8:10CR146 charges a violation of 18 U.S.C. § 371, specifically Conspiracy to Use a Facility of Interstate Commerce to Promote Prostitution and to Induce a Person to Travel in Interstate Commerce to Engage in Prostitution and to Travel in Interstate Commerce with Intent that a Person Engage in Prostitution. Counts III, V and VI charge a violation of 18 U.S.C. § 1952(a)(3)(A), specifically, using an Instrumentality of Interstate Commerce to Promote Prostitution. Count IV charges a violation of 18 U.S.C. § 2421, specifically, Transportation with Intent to Promote Prostitution ("the Mann Act"). Counts VIII and IX charge violations of 18 U.S.C. § 1956(a)(1)(B)(1), specifically, Money Laundering. Count I of the Indictment in 8:10CR425 charges a violation of 18 U.S.C. § 1512(b)(1), specifically, Tampering with a Witness.

The counts related to prostitution (I, III, V & VI) each have a statutory maximum sentence of five years. The Mann Act charge has a statutory maximum of ten years and the money laundering counts and witness tampering have statutory maximum sentences of twenty years.

193 in 8:10CR146, Petition; Filing No. 39 in 8:10CR425, Petition.  The defendant also agreed to forfeit his interest in certain real estate and vehicles.  Filing No. 40 in 8:10CR425, Plea Agreement.  The court accepted his plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated his sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 191 in Case No. 8:10CR146, text minute entry.  Having reviewed the PSR, the court accepts the plea agreement.

In the plea agreement, the defendant agreed that if the court found he caused persons under the age of 18 to engage in a commercial sex act or prohibited sexual conduct in furtherance of the crimes to which he is pleading guilty, the applicable sentencing guideline range would be determined through the application of U.S.S.G. § 2G1.3.  After an evidentiary hearing, the court overruled the defendant's objections to the PSR and found the defendant had caused a person under the age of 18 to engage in a commercial sex act or prohibited sexual acts.  Filing No. 248, Memorandum and Order.

The defendant's offense conduct involved conspiring to operate and operating an Internet-based prostitution ring that ostensibly offered the services of female "escorts" to engage in nude modeling and lingerie modeling and to provide massages and companionship, but in reality operated as a front for prostitution.  Most escorts employed by the defendant's business, Dream Girls, Inc., would engage in prostitution on the majority of those engagements.  Specifically, the escorts would agree to perform sex acts for money.  The money, characterized as "tips," would be negotiated between the escort and the customer and could amount to hundreds or even thousands of dollars.  The "tips"

2

would sometimes be kept by the escort and sometimes be shared with the defendant. The defendant used telephones, cell phones, and computers in the business and transported escorts between Omaha, Nebraska, and Carter Lake and Council Bluffs, Iowa. *Id.* at 6-7. The defendant advertised on the Internet, in telephone directories and on vehicles.

Richard Costanzo employed numerous individuals as escorts, call takers, and drivers. Call takers would accept incoming customer calls and dispatch escorts. Drivers would transport the escorts to and from the appointments with customers. From time to time the drivers would collect cash paid by customers to the escorts. The defendant laundered the proceeds of the business by borrowing money to purchase assets and then repaying the loans with cash from the business. Over the duration of the escort service business, the defendant employed as many as 2,000 women.

While on pretrial release, the defendant attempted to encourage a witness not to testify and not to tell the truth to authorities, and he was prosecuted for witness-tampering.

The Probation Office determined that the defendant's base offense level was 24 under U.S.S.G. § 2G1.3(a)(4). It applied a two-level increase under U.S.S.G. § 2G1.2(b)(2)(B) for influencing a minor to engage in sex acts; a two-level enhancement under U.S.S.G. § 2G1.3(b)(3)(A) for use of a computer to entice or persuade a minor to engage in prohibited sexual conduct; a two-level adjustment under U.S.S.G. § 2G1.3(b)(4)(B) for an offense involving a commercial sex act; a four-level increase under U.S.S.G. § 3B1.1(a) as a leader or organizer of a criminal activity that involved more than five participants; and a two-level adjustment under U.S.S.G. § 3C1.1. for obstruction of justice. The application of those adjustments resulted in an adjusted offense level of 36.

After the application of a multiple count adjustment, the defendant's Total Offense level was 38. No adjustment for acceptance of responsibility was recommended in the PSR. The defendant has no criminal history points and a criminal history category of I. At total offense level 38 and criminal history category I, the defendant's sentencing range of imprisonment under the Guidelines is 235 to 240 months (roughly nineteen-and-one-half to twenty years, capped at the statutory maximum).

The government had no objection to the findings in the PSR. The defendant objected to those portions of the PSR that dealt with use of a minor. Filing No. 211 & Filing No. 215. The court overruled the defendant's objections with respect to one minor. Filing No. 248. The defendant also moved for a sentence outside the Guidelines, arguing that a sentence of five to six years would be appropriate. The government opposed that motion, urging a sentence at the low end of the Guidelines' recommended sentence.

## II. Law

At sentencing, the government bears the burden of proving by a preponderance of the evidence each of the facts necessary to establish a sentencing enhancement. *United States v. Brooks*, 648 F.3d 626, 629 (8th Cir. 2011). The Sentencing Guidelines are no longer mandatory and the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United States v. Booker,* 543 U.S. 220, 260-61 (2005); *Gall v. United States,* 552 U.S. 38, 59 (2007); *Kimbrough v. United States,* 552 U.S. 85, 101 (2007). In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *See, e.g., Gall,*

552 U.S. at 41, 49-50 & n.6. That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)).

The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson v. United States*, 555 U.S. 350, 350-51 (2009) (per curiam). In determining a sentence, the court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards, basing its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise. *Kimbrough*, 552 U.S. at 108-09; *Rita v. United States*, 551 U.S. 338, 349-50 (2007).

In formulating most Guidelines, the Commission developed and used data on past practices and recidivism to establish offense levels for each crime, linked to a recommended imprisonment range, based on these sentencing statistics. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* ("Fifteen-Year Assessment") 14, 72-73 (November 2004), *available at* http://www.ussc.gov/Research/Research_Publications/publications.cfm (last visited November 16, 2011); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough, 552 U.S. at 96*. When Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on any identified empirical approach, but are

5

instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" [Kimbrough, 552 U.S. at 109-110](#) (quoting *Rita*, 551 U.S. at 350)). Accordingly, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." [Kimbrough, 552 U.S. at 110](#).

Both for policy reasons and because of Congressional directives, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses. Fifteen-Year Assessment at 15, 72-73; United States Sentencing Commission, *The History of the Child Pornography Guidelines* ("Child Porn. Hist. Rep't") 44-48 (October 2009), *available at* http://www.ussc.gov/Publications/Offense_Types/index.cfm (discussing setting base offense levels that correspond to a mandatory minimum sentence) (last visited Nov. 16, 2011); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), *available at* http://mow.fd.org/ index.shtm (unpublished comment, last visited Nov. 16, 2011). The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives. Child Porn. Hist. Rep't at 6 (stating "Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses" and noting that "[the Commission] must bow to the specific directives of Congress"); *see, e.g.*,

6

U.S.S.G. App. C, Vol. I, amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996); Vol. II, amends. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amends. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, *Report to Congress: Sex Crimes Against Children, Findings and Recommendations Regarding Federal Penalties* ("Sex Crimes Rep't") (June 1996), *available at* http://www.ussc.gov/Publications/Reports_to_Congress/index.cfm (last visited Nov. 16, 2011).

In 1984, Congress raised the age of children protected under statutes criminalizing sexual abuse against minors from sixteen to eighteen years. *See* Child Protection Act of 1984, Pub. L. No. 98–292, 98 Stat. 204; H.R. Rep. 98–536, at 5, reprinted in 1984 U.S.C.C.A.N. 492, at 496. That change was made in order to "facilitate prosecution and conviction in cases in which the age of the child depicted cannot be proven by positive identification of the child." 1984 U.S.C.C.A.N. 492, *499, 1983 WL 25391, **6 (noting that in child pornography cases, the child depicted cannot be located and "unless the child appeared to have not yet attained puberty (and therefore was definitely under age 16), an offense could not be proven"). In the Child Protection Restoration and Penalties Enhancement Act of 1990, enacted as part of the Crime Control Act of 1990, the Commission was instructed to "amend existing guidelines for sentences involving sexual crimes against children so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate." Crime Control Act of 1990, Pub. L. No. 101–647, § 321, 104 Stat. 4789, 4817.

Over the years, Congress has passed numerous laws of increasing severity regarding exploitation of children, but the focus of Congressional attention has been child

7

pornography offenses. *See, e.g.,* Protection of Children Against Sexual Exploitation Act of 1977, Pub. l. No. 95-225, 92 Stat. 7 (codified as amended at 18 U.S.C. §§ 2251-2253); Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204 (codified as amended at 18 U.S.C. § 2253); Child Protection and Obscenity Enforcement Act of 1988, Pub. L. No. 100–690, 102 Stat. 4181 (codified as amended at 18 U.S.C. §§ 2251 & 2252(a)); Crime Control Act of 1990, Pub. L. No. 101–647, § 321, 104 Stat. 4789, 4817 (instructing Sentencing Commission to study sex crimes and raise penalties); the Sex Crimes Against Children Prevention Act of 1995, Pub. l. No. 104-71, 109 Stat. 774 (codified as amended at 18 U.S.C. §§ 2251 & 2252); the Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-26 (codified as amended at 18 U.S.C. § 2251) (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002), & 2252A; the Protection of Children from Sexual Predators Act of 1998 ("Sexual Predators Act"), Pub. L. No. 105-314, 112 Stat. 2974 (codified as amended at 18 U.S.C. § 2426); the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (codified as amended at 18 U.S.C. § 2252B); PROTECT Our Children Act of 2008, Pub. L. No. 110–401, 122 Stat. 4229 (codified as amended at 18 U.S.C. §§ 2251, 2252A, 2256, 2258, 2260, & 2702); Child Porn. Hist. Rep't at 6. Congress has also expressed concern with sexual predators. *See* Sexual Predators Act, Pub. L. No. 105-314, § 104, 303, 112 Stat. 2974, 2976, 2979 (increasing the statutory maximum sentences for several offenses); Sexual Predators Act Policy Team, United States Sentencing Commission, *Sentencing Federal Sexual Offenders: Protection of Children*

*from Sexual Predators Act of 1998* at 18 (Feb 17, 2000) ("Sexual Predators Rep't") (available at http://www.ussc.gov/Publications/Offense_Types/index.cfm) (last visited Nov. 16, 2011). The various enactments, amendments and recommendations had the goal of "ensur[ing] lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children." Sex Crimes Rep't, Executive Summary at i. Noting that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," the commission nonetheless found amendments appropriate "to increase sentences for the most dangerous offenders." *Id.* The Sexual Predators Act was passed with the stated purpose of protecting children from sexual abuse and exploitation, and Congress was particularly concerned about "recent highly publicized news accounts in which pedophiles have used the Internet to seduce or persuade young people to meet them to engage in sexual activities." Sexual Predators Rep't at 5 (also noting that youths who have agreed to such meetings have been kidnaped, photographed for child pornography, raped, beaten, robbed, and worse).

The clear focus of this legislation and concomitant Guidelines revisions has been on the patent evils of child exploitation and child pornography and the new dimension that computer technology adds to those evils. *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251; Child Porn. Hist. Rep't at 30-31. In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to

9

engage in sexual activity." U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); Child Porn. Hist. Rep't at 30-31.  Similarly, "[t]he growth of the Internet has resulted in mounting concern about its abuse by pedophiles as a means for identifying, contacting, and coercing children into sexual activity."  Sexual Predators Rep't at 2.  In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism."  Child Porn. Hist.  Rep't at 37.

   III.  Discussion

      A.  Guideline Calculation

The court finds the defendant's base offense level under the Guidelines is 24 and that the following adjustments are warranted:  a two-level enhancement for a minor, a two-level enhancement for use of a computer; a two-level enhancement for a commercial sex act, a four-level enhancement for being a leader or organizer; and a two-level enhancement for obstruction of justice, resulting in a total offense level of 36.  The court imposes a one-level adjustment for acceptance of responsibility and the government moved for a one-level adjustment, resulting in a total offense level of 34.  At offense level 34 and criminal history category I, the defendant's sentencing range under the Guidelines is 151 to 188 months.

      B.  Section 3553(a) Factors

The court finds the defendant's motion for a sentence outside the Guidelines should be granted.  A sentence outside the Guidelines is warranted in this case.  In consideration of the § 3553 factors, the court finds a sentence of 96 months (8 years) is "sufficient, but

not greater than necessary" to accomplish the goals of sentencing with respect to this defendant.[2]

The offense conduct in this case involved prostitution and transportation of women across state lines for purposes of prostitution. The conduct at the heart of its case is the Mann Act charge, which carries a statutory maximum of 10 years. The defendant's sentence is capped at 20 years as a result of the money-laundering and witness-tampering charges. The conspiracy and use of interstate instrumentalities counts carry statutory maximum sentences of five years. The money-laundering and witness-tampering charges were peripheral to the relevant offense conduct and should not drive the sentence.

If the defendant had not been subject to the Guidelines for conduct involving minors, but under the Guidelines applicable to a Mann Act offense that did not involve a minor, his base offense level would have been 14, and after application of adjustments and acceptance of responsibility, his total offense level would have been 24, which at criminal history category I would have yielded a sentencing range of 51 to 63 months (approximately 4 or 5 years). If a two-level enhancement for use of a minor had been applied to that scenario, his resulting sentence would have been 63 to 78 months (roughly five to six-and-one-half years). Similarly, if the defendant had been sentenced for only the money-laundering conduct, his sentence would have been in the general range of five to six years.

In consideration of the nature and circumstances of the offense, the court notes that the enterprise continued for a long time and the defendant contributed to the destruction

---

[2]Specifically, the defendant is sentenced to a term of 60 months on counts I, III, V and VI, to run concurrently, and to 96 months on counts IV, VIII and IX in case No. 8:10CR146 and 96 months on count I in case 8:10CR425, to run concurrently.

of many lives, including his own and those of his family. Nevertheless, the court finds the Guidelines-recommended sentence of twelve-and-one-half to fifteen-and-one-half years is greater than necessary to punish the defendant.

The defendant's conduct in this case, with the exception of employing one minor who was close to the age of majority, was not the sort of conduct that the harsh penalties are aimed at preventing. The defendant's offense was a sexual exploitation crime. Sexual exploitation crimes include sexual abuse, production of and trafficking in child pornography, enticement of minors to engage in sexual conduct, and exploitation of children for the purposes of prostitution or pornography. Costanzo's offense falls at the low end of the continuum of criminal conduct that exploits children. His offense was primarily aimed at adults. There was no evidence that the defendant coerced or pressured any women to engage in prostitution. The minor he employed was almost 18 and there is no evidence that she was coerced, or even encouraged, by Costanzo to engage in the activity. Costanzo's crime did not involve the type of predatory conduct or pattern of activity aimed at exploitation of minors that is the target of the child-exploitation Guidelines.

With respect to the history and characteristics of the defendant, the court notes that the defendant had a difficult childhood and was a victim of sexual abuse by a priest, as well as a victim of physical and emotional abuse by his parents. His childhood was characterized by trauma and loss.[3] As an adult, he has undergone substance abuse treatment several times and has been dependent on alcohol, marijuana, cocaine, mushrooms, and Percocet. He reports that he received mental health treatment for

---

[3]The defendant's sister died and his bother committed suicide within one month of each other.

Posttraumatic Stress Disorder and Bi-Polar disorder.  He is presently on disability as a result of Hepatitis C, Chronic Obstructive Pulmonary Disease, and Polio, and he was treated for Cancer in 2003.

Based on the court's review of the record, it appears that Costanzo's mental status and abusive history contributed to his actions and must be considered in determining his culpability.  The court finds his culpability is lessened to some degree by his mental health and substance abuse issues.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point.  However, the Guidelines applicable to Costanzo are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical method.  The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience, and independent expertise that characterize the Sentencing Commission's institutional role.  The court accordingly affords less deference to the Guidelines.  Further, the court notes that the Guidelines sentences for sex offenses against children are especially harsh.  The Sentencing Commission diverged significantly from its studied, empirical approach in formulating the Guidelines that apply to Costanzo's case and the result is a recommended sentence that is greater than necessary to provide just punishment.  Running a prostitution ring is hardly a harmless activity, but it cannot be equated with the sort of direct physical abuse, sexual molestation or exploitation of children, or production and trafficking in child pornography that is the target of Congressional enactments imposing such harsh penalties for sexual exploitation of minors. The court finds that the ranges of imprisonment recommended under the Guidelines would

be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case.

Because of the application of enhancements that are generally aimed at sexual predators or child pornographers, the Guidelines' sentencing scheme for a Mann Act violation illogically skews the sentence for an "average" defendant beyond the statutory maximum, regardless of the particular defendant's ameliorating circumstances, thus blurring distinctions between the least culpable and the worst offenders. The court finds an outside-the-Guidelines sentence of 96 months is sufficient to achieve the goals of sentencing in this case. Eight years is a significant term of imprisonment for an offender who has not spent any significant time in prison.

The public will be adequately protected by a three-year term of supervised release with strict conditions and by compliance with the Sexual Offender Registration and Notification Act ("SORNA") requirements for convicted offenders. Further the interests of the public will be served by the provision of mental health and substance abuse evaluations and treatment to Costanzo. The deterrent effect of any longer sentence would be marginal. Further, to the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court has also considered the need to avoid sentencing disparities. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Interstate transportation of persons between 16 and 18 for purposes of prostitution was criminalized in order to ensure the prosecution of sexual predators and purveyors of child pornography involving younger

children. The harsh penalties for sexual exploitation crimes involving children are imposed because of concerns that the Internet facilitates access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the pornographic materials to desensitize and entice victims. This case does not involve such conduct. Legislative history shows Congressional concern with dangerous child abusers and repeat offenders. Application of U.S.S.G. § 2G1.3 and special offense characteristics applicable to that Guidelines section are designed to apply to the most dangerous of child exploitation offenders and Costanzo does not fall in that category. The circumstances of the crime involved only one minor who was close to legal age and there is no evidence that he targeted, enticed or coerced her to engage in prostitution. Costanzo's limited criminal history suggests that a sentence of eight years, followed by three years of supervised release, is likely to afford adequate punishment and deterrence.

The court further finds that an outside-the-Guidelines sentence will respect the distinction between Costanzo's culpability and the far greater culpability of an actual predator, an abuser of young children, or a prostitution ring that targets minors. The sentence of an individual who, for the most part engages in promotion and facilitation of prostitution by adults should be proportional to and significantly lower than a sentence for an exploitative crime that involves acts of abuse or enticement of minors. Moreover, the court finds that a sentence of eight years is more proportional to sentences for similar crimes than the lengthy recommended Guidelines sentence would be.

Costanzo's sentence is close to the statutory maximum for the crime that most closely reflects his conduct. Also, the sentence is relatively proportional to the sentences of defendants who have engaged in more serious child sexual exploitation crimes such as

production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

A judgment in conformity with this sentencing memorandum will be issued.

DATED this 23rd day of November, 2011.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.